IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **MICHAEL BYRD,** | } |
| **Plaintiff,** | } |
| v. | } Case. No.: 3:07-CV-1472-RDP |
| **MICHAEL J. ASTRUE,** | } |
| **Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Michael Byrd brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed his application for a period of disability, DIB, and SSI on September 11, 2003. (Tr. 51-53). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 39). Plaintiff's case was heard by ALJ Jack Ostrander on May 16, 2005. (Tr. 44, 1214-61). In his May 31, 2006 decision, ALJ Ostrander determined that Plaintiff was not eligible for a period of disability, DIB, or SSI because he failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform light work with limitations in the absence of drug and alcohol abuse. (Tr. 16-30). The Appeals Council denied

Plaintiff's request for review of the ALJ's decision on June 12, 2007. (Tr. 6-8). Within the required time limitations, Plaintiff filed his civil action in this court.

Plaintiff was born on July 9, 1962 and has a high school education. (Tr. 51, 79, 1223). He alleges that he has been unable to engage in substantial gainful activity since December 31, 2002. (Tr. 51, 74, 82, 1226). Plaintiff claims that he became unable to work due to chronic pancreatitis, hepatitis C, hypothyroidism, depression, and five previous testicular surgeries.[1] (Tr. 73).

On November 23, 2001, Dr. Marie B. Go, a psychiatrist, evaluated Plaintiff for polysubstance dependence. (Tr. 568-69). Plaintiff reported a 13-year history of crack cocaine use, a 25 year history of marijuana use, and a 26 year history of alcohol use. (Tr. 568). Plaintiff further reported that he smoked crack cocaine and drank alcohol the day before the exam and last smoked marijuana on November 1, 2001. (*Id*). Dr. Go observed Plaintiff's insight and judgment to be unimpaired and his mood was euthymic. She diagnosed Plaintiff with polysubstance dependence using cocaine, marijuana, and alcohol, and a Global Assessment of Functioning ("GAF") score of 60 (moderate difficulties in social or occupational functioning). (Tr. 569).

On April 11, 2002, Plaintiff was admitted to the VA Medical Center with complaints of sharp right side abdominal pain. (Tr. 1057). Plaintiff reported that he had not taken any drugs since Thanksgiving. However, the examining physician, Dr. Fernando Ovalle, noted that Plaintiff had a positive urine drug screen (UDS) on March 22, 2002. (Tr. 1058).

On April 17, 2002, Plaintiff underwent an outpatient substance abuse clinical evaluation. (Tr. 1034). Dr. Norm Huggins diagnosed Plaintiff with a GAF score of 65 (mild difficulty in social

---

[1] Plaintiff's medical record evidence is voluminous. However, because the parties do not dispute the ALJ's findings as to Plaintiff's non-psychological symptoms, the court will list only the portions of Plaintiff's medical records that relate to his impairments at issue here.

or occupational functioning, but generally functioning pretty well, has some meaningful interpersonal relationships). (*Id*.).

On June 12, 2002, Plaintiff returned to the VA Hospital for detoxification of alcohol. (Tr. 834). The examining physician, Dr. Michael J. Mugavero, noted that Plaintiff had been expelled from the Tuscaloosa Medical Center Lodge for testing positive for marijuana, barbiturates, and opiates. (Tr. 835). Dr. Mugavero characterized Plaintiff as a "chronic abuser or cocaine, alcohol and many other drugs." (*Id*.). Plaintiff also complained of chronic abdominal pain, though no evidence for his pain was found during Dr. Mugavero's work-up. (Tr. 836). There was no evidence of pancreatitis, cholecystitis, or any inflamation to the liver. (*Id*.).

On August 28, 2002, Dr. Tahir Tellioglu, a psychiatrist, evaluated Plaintiff for acute cocaine abuse problems and worsening symptoms of depression, including suicidal ideations, anergia, loss of appetite, and insomnia. (Tr. 519). Plaintiff reported that he had lost his job two months before because of absenteeism and that lead to financial difficulties which caused him to also lose his apartment. (*Id*.). Dr. Tellioglu observed Plaintiff to be mildly nervous and restless with no bizarre behavior. (*Id*.). Plaintiff's speech was non-pressured, he exhibited no perceptual disturbances, and he denied suicidal and homicidal ideation. (*Id*.). Plaintiff told Dr. Tellioglu that he had not used drugs since he underwent surgery, however his UDS was positive for cocaine. (*Id*.). Dr. Tellioglu diagnosed Plaintiff with polysubstance dependence, substance induced mood disorder, and a GAF score of 45 (serious impairment in social occupational functioning). (Tr. 520).

On October 12, 2002, Dr. Don Elazar conducted a psychiatric evaluation of Plaintiff. (Tr. 237-46). Plaintiff reported experiencing periods of depression lasting up to three weeks during which he has fatigue, "sleeps a lot," has low energy, low concentration, low appetite, and anhedonia.

(Tr. 238). He also reported periods of up to three weeks where he has a lot of energy, only needs three hours of sleep to feel rested, engages in reckless spending, is easily angered, easily irritable, has racing thoughts, talks fast, has an increase in goal directed activity, and has frequent sexual partners. (*Id.*). Plaintiff also told Dr. Elazar that he did not want any substance abuse rehabilitation treatment. (Tr. 239). Dr. Elazar noted that Plaintiff reported being in pain, but ate 90% of his dinner and engaged in a long discussion with a nurse regarding his medication. (*Id.*). Dr. Elazar observed Plaintiff's mood as depressed, but his affect as calm and smiling, noting that the only time Plaintiff seemed nervous, anxious, or dysphoric was when he was talking with the nurse about his medications, especially pain medications. (Tr. 242). Dr. Elazar diagnosed Plaintiff with possible bipolar affective disorder vs. cyclothymia, history of polysubstance dependence (alcohol, cocaine, opiates, marijuana), history of substance induced mood disorder, possible personality changes secondary to CHI in the past, and a GAF score of 41-50 (serious impairment in social or occupational functioning). (Tr. 245).

On December 11, 2002, Dr. William T. Hackett examined Plaintiff for complaints of abdominal pain. (Tr. 932). Plaintiff reported he had not taken his previously prescribed Methadone in two weeks due to disturbed sleep and a rash and itching at his ankles and belt line. (*Id.*).

On March 6, 2003, Dr. William T. O'Byrne examined Plaintiff for complaints of suicidal ideations and flank pain. (Tr. 887). Dr. O'Byrne noted Plaintiff had a problem with cocaine dependence, continuous use, unspecified alcohol dependence, in remission, and lack of housing. (*Id.*). Dr. O'Byrne's diagnostic impression of Plaintiff lists polysubstance abuse with suicidal ideation, chronic pancreatitis, and abdominal pain, although his abdominal complaints were out of proportion to his physical exam findings. (Tr. 886).

On July 25, 2003, Plaintiff was admitted to the emergency department of the VA hospital with complaints of bladder problems. (Tr. 687-88). Psychiatrist, Dr. Joseph Battaile, examined Plaintiff because Plaintiff admitted to using $50.00 worth of crack cocaine in the preceding few days. (Tr. 687). Plaintiff also reported that his medication, namely his Methadone, had been stolen. (*Id.*). Dr. Battaile noted that Plaintiff was not psychotic, he denied suicidal and homicidal intent, and was not having severe mood dysphoria. (*Id.*). Dr. Battaile diagnosed Plaintiff with the following conditions: cocaine abuse, episodic; tobacco use disorder; and depression, neurotic. (Tr. 688).

On October 1, 2003, Dr. Zaida Reoyo examined Plaintiff for medication management. (Tr. 860). Plaintiff reported that his medication had been stolen fifteen days prior. (*Id.*). Dr. Reoyo noted that Plaintiff appeared dysphoric and complained of feeling depressed and anxious about his whole life situation. (*Id.*). Plaintiff reported having used cocaine and marijuana two days prior to the examination. (*Id.*). He denied any intentions of self harm or any organized plan to act against himself. (*Id.*). Dr. Reoyo noted that Plaintiff was not psychotic and there was no evidence of any significant cognitive or memory deficits. (*Id.*). Dr. Reoyo diagnosed Plaintiff with drug induced mood disorder, cocaine dependence, alcohol dependence, and a GAF score of 55 (moderate difficulties in social or occupational functioning). (*Id.*).

On October 16, 2003, Plaintiff was admitted to Northport Medical Center for complaints of chronic abdominal pain secondary to pancreatitis, but the examining physician, Dr. Omar Mohabbat, opined that the pain could be related to Plaintiff's alcoholism. (Tr. 769). Dr. Mohabbat noted that Plaintiff denied having delusions, was not psychotic, was not hallucinating, and his thought content was possibly normal. (Tr. 770). Dr. Mohabbat diagnosed Plaintiff with anxiety disorder, depression, alcoholism, and a GAF score of 55 (moderate difficulty in social or occupational functioning). (Tr.

769). Dr. Mohabbat also noted that Plaintiff's Axis IV psychological and environmental problems are moderate to severe and are the result of his anxiety disorder, depression, and alcoholism. (Tr. 769).

On October 18, 2003, Plaintiff was admitted to the VA Hospital with complaints of a two-week history of vomiting four to five times daily. (Tr. 828). Plaintiff also reported lightheadedness, right and left-sided burning abdominal pain, fatigue, dysphagia, and lower extremity swelling. (*Id.*). The examining physician, Dr. Thomas Huddle, noted that Plaintiff's history varied greatly between interviewers. (*Id.*). He further noted that Plaintiff's past medical history included: chronic pancreatitis; cocaine dependence, continuous use; unspecified alcohol dependence; homelessness; drug-seeking behavior; history of H. Pylori and gastritis, treated; and hepatitis-C. (Tr. 828-29). Dr. Huddle diagnosed Plaintiff with gastrointestinal bleed, hypothyroidism, polysubstance abuse, chronic pancreatitis, and hepatitis-C. (Tr. 828).

On October 31, 2003, Plaintiff was admitted to the VA Hospital with complaints of abdominal pain. (Tr. 1076). Plaintiff reported that he had not taken his medication for the previous two weeks because it was stolen. (Tr. 1079). Plaintiff's radiologist, Dr. Ajay K. Bali, concluded that a CT of Plaintiff's abdomen performed prior to his November 6th discharge was unremarkable and did not show any changes from the previously performed CT of September 16, 2002. (Tr. 1108). Dr. Kenneth J. Carpenter, a consulting gastroenterologist, concluded there was no organic cause for Plaintiff's pain and he might have been engaging in drug seeking behavior. (Tr. 1112).

On December 29, 2003, James E. Crowder, Ph.D., conducted a consultative psychological examination of Plaintiff. (Tr. 1129-32). Dr. Crowder observed no indication of a severe mood disturbance, but Plaintiff did appear anxious. (Tr. 1131). Plaintiff's thought processes were

6

coherent and there was no flight of ideas, no loose associations, no delusions, and no hallucinations. (*Id.*). Dr. Crowder estimated Plaintiff's level of intellectual functioning to be in the average range. (*Id.*). He diagnosed Plaintiff with a history of drug abuse, cocaine and marijuana; and a GAF score of 70 (mild difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships). (Tr. 1131-32). Dr. Crowder concluded that Plaintiff has no limitation in his ability to relate to others, no constriction of interest, and no restriction of daily activities based on his mental condition alone. (Tr. 1132). Dr. Crowder further concluded that Plaintiff has good ability to understand, carry out, and remember simple instruction, and good ability to respond appropriately to supervisors, coworkers, and work pressures in a work setting. (*Id.*). Dr. Crowder opined that Plaintiff's primary problem appeared to be physical and he would be able to manage financial benefits in his own best interest assuming he is drug free. (*Id.*).

On December 24, 2004, Plaintiff was admitted to the VA Hospital with complaints of depression. (Tr. 1187). Plaintiff reported that he had not been taking his previously prescribed antidepressant medication. (Tr. 1188). The examining physician, Dr. Mary A. Toshcoff, concluded that Plaintiff was not severely depressed or suicidal. (*Id.*). There were no clinically significant abnormal findings on admission. (*Id.*). Plaintiff reported he had not been compliant with the aftercare meetings and drug screens that were part of a treatment program associated with the Salvation Army facility where he was living. (Tr. 1191). Dr. Toschoff noted that Plaintiff's family was not receptive to having him live with them upon discharge. (Tr. 1188). Upon discharge, Plaintiff was instructed to abstain from alcohol and drugs. (*Id.*). He informed Dr. Toshcoff that he had an ample supply of Methadone. (*Id.*). Dr. Toshcoff discharged Plaintiff on January 19, 2004, with the following diagnoses: depression, rule out substance induced vs. adjustment induced

disorder with depressed mood; nicotine dependence; polysubstance dependence; and past diagnosis of cluster B personality traits. (Tr. 1187). Upon admission, Plaintiff was diagnosed with a GAF score of 45 (serious impairment in social or occupational functioning), and upon discharge, he was diagnosed with a GAF score of 57 (moderate difficulty in social and occupational functioning). (*Id*.).

During Plaintiff's hospitalization, Dr. Thomas H. McNutt evaluated Plaintiff to determine his employability and feasibility for vocational rehabilitation. (Tr. 1197). Dr. McNutt noted that Plaintiff had a history of significant problems with supervisors and coworkers, which resulted in marked problems on the job and not being able to complete job duties in a satisfactory manner. (*Id*.). Dr. McNutt observed Plaintiff to have some impaired concentration and difficulty focusing on a particular subject, and that Plaintiff also experienced problems in carrying out complex task instructions, which improved when Plaintiff was prompted. (Tr. 1198). Dr. McNutt opined that Plaintiff is markedly impaired in responding appropriately to supervision and to coworkers on the job and being able to follow and carry out work instructions. (*Id*.). He estimated Plaintiff's cognitive functioning to be in the average range. (*Id*.). Dr. McNutt concluded that the severity of Plaintiff's symptoms limit his ability to process work procedures and instructions that are required in competitive employment, and his emotional lability prevents him from getting along with coworkers without distracting them or exhibiting behavioral extremes. (*Id*.). Dr. McNutt opined that Plaintiff's severe psychiatric problems prevent him from being able to meet the demands of work on a sustained basis in a competitive work environment. (*Id*.). According to Dr. McNutt, Plaintiff's severe symptoms have been present for over twelve consecutive months, are chronic in nature, and have an extremely poor prognosis for improvement. (*Id*.). He finally concluded that Plaintiff does not meet the requirements for competitive employment nor is he a candidate for vocational

rehabilitation due to the severity of his psychiatric problems and extremely poor prognosis for recovery. (*Id*.).

**II.     ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq*. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.* Pursuant to the Contract with America Advancement Act of 1996, 42 U.S.C. §

9

423(d)(2)(c) (1997), "the claimant bears the burden of proving that [alcohol or substance abuse] is not a contributing factor material to the disability determination." *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2002, his alleged onset date of disability. (Tr. 17). The ALJ determined that Plaintiff has status post pancreatitis, drug abuse, substance induced mood disorder, depression, and anxiety. (Tr. 23). The ALJ then concluded that, based on all of Plaintiff's impairments, including the substance abuse disorders, Plaintiff is unable to perform even sedentary work or sustain a 40-hour work week with adequate work attendance and his nonexertional impairments impose at least marked limitations on his ability to maintain adequate concentration, persistence, and pace. (Tr. 24). Relying on these findings and the testimony of a vocational expert ("VE") familiar with Plaintiff's background, the ALJ found that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25). The ALJ, therefore, concluded that a finding of disabled was appropriate under the framework of 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966. (*Id*.).

Notwithstanding this finding, the ALJ concluded that Plaintiff had not met his burden of proving that drug addiction or alcoholism is not a controlling factor material to the determination of his disability. (*Id*.). According to the ALJ, Plaintiff is not credible with respect to both his physical and mental impairments because of repeated instances of being intoxicated during medical examinations, drug seeking behavior well known to his physicians, a lack of objective findings on pancreatitis, inconsistencies between what Plaintiff tells each of his physicians, allegations of extreme stomach pain when Plaintiff had an ample supply of Methadone, and inconsistencies in

Plaintiff's allegations of mental problems. (Tr. 27). Furthermore, when Plaintiff was not under the influence of drugs or alcohol, his psychological examinations revealed no disabling mental impairment. (*Id*.). The ALJ determined, in the absence of polysubstance abuse, that Plaintiff retains the RFC to perform light work activity with these additional limitations: performing simple, not complex tasks and maintaining attention and concentration at those tasks for an 8-hour day provided customary breaks are given; his contact with the general public and coworkers should be minimal and casual; his supervision should be direct and non-confrontational; changes to his work setting should be gradual and well explained; he experiences moderate pain with its moderate effect on ability to concentrate; he is unable to work around unprotected heights or dangerous moving equipment, and no ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and he can frequently grasp, handle, and do fine manipulation. (Tr. 28).

The VE testified that an individual with Plaintiff's limitations, without polysubstance abuse, could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 1258-59). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff, in the absence of polysubstance abuse, was not under a disability at any time through the date of the decision. (Tr. 28).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner, reversed or in the alternative, remanded for further consideration. (Doc. # 9, at 8). Plaintiff asserts that there are three reasons why this court should grant the relief he seeks:  (1) the ALJ failed to give proper weight to Dr. McNutt's opinion that Plaintiff's severe depression/anxiety

prevent him from meeting the requirements of competitive employment; (2) the ALJ improperly applied the medical evidence in determining that Plaintiff does not meet Listing 12.04 for depression at step three of the sequential evaluation; and (3) the ALJ failed to properly consider Plaintiff's impairments in combination in evaluating disability. (Doc. #9).

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and remand. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.     The ALJ Properly Discounted Dr. McNutt's Opinion that Plaintiff's Severe Depression/Anxiety Prevent Him from Meeting the Requirements of Competitive Employment

Plaintiff's first argument is that the ALJ erred by giving insufficient weight to Dr. McNutt's medical opinion. As a treating physician, Plaintiff contends, the opinion of Dr. McNutt should be accorded substantial weight. (Doc. #9, at 5).

In *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971 (11th Cir. 2007), the court held that the ALJ was entitled to reject the examining psychologist's opinion because "his opinion was contrary to the opinions and assessments of the other state agency psychologists who found that Wainwright was only moderately limited in her ability to perform work-related activities." *Id*. at 2. A physician's opinion is to be given weight when it is well-supported by clinical and laboratory findings, is not internally inconsistent, and is consistent with other evidence. *See* 20 C.F.R. §§ 404.1527(b), (c)(2), and (d)(3)-(4); 416.927(b), (c)(2), and (d)(3)-(4). The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (*citing Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Crawford v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that the ALJ's decision to discount a consultive psychologist's opinion that the claimant had marked psychological limitations was supported by substantial evidence. 363 F.3d

1155, 1160 (11th Cir. 2004). The court noted that the psychologist examined the claimant on only one occasion, and the ALJ's findings were supported by the opinion of a psychiatrist who had examined the claimant on two occasions. *Id.*

Here, the ALJ properly evaluated Dr. McNutt's opinion and accorded it no weight because it was inconsistent with the credible evidence of record. (Tr. 22-23, 28). The ALJ evaluated the exam and opinion of Dr. Crowder and gave it significant weight because it was consistent with the credible evidence of record. (Tr. 28). The opinion notes that the GAF score assessed by Dr. Crowder was consistent with Plaintiff's other GAF scores of record. (Tr. 28). Significantly, the ALJ noted that when Plaintiff was discharged from the VA Hospital on January 19, 2004, shortly after Dr. McNutt rendered his opinion during the same hospitalization, Dr. Toshcoff stated that Plaintiff did not appear to be severely depressed and assessed Plaintiff a GAF score of 57 (moderate difficulty in social and occupational functioning). (Tr. 1187-89). At that time, Plaintiff himself rated his depression as only moderate. (Tr. 1195).

Furthermore, the ALJ noted the assessments given Plaintiff by other doctors between November 2001 and October 2003: Psychiatrist Marie Go assessed a GAF score of 60; Psychiatrist Norm Huggins assessed a GAF score of 65; and Dr. Zaida Reoyo and Dr. Omar Mohabbat assessed a GAF score of 55. (Tr. 569, 769, 860, 1034). These scores are consistent with the opinions of Dr. Crowder and Dr. Toshcoff and inconsistent with Dr. McNutt's opinion. (Tr. 27-28). The ALJ also pointed out that Dr. Crowder's exam was performed during one of the few periods of record when Plaintiff was sober, and found that this opinion was likely to be an accurate assessment of Plaintiff's mental functioning ability absent drug and alcohol abuse. (Tr. 27-28).

Considering the ALJ's findings in light of the applicable standard of review, the court finds no error. Dr. McNutt's opinion is contrary to substantial credible evidence of record and does not consider Plaintiff's well-established and documented history of polysubstance abuse. Dr. Crowder's opinion, on the other hand, is consistent with the other medical evidence of record, including that of Dr. Toshcoff. The ALJ did not err in finding it to be an accurate assessment of Plaintiff's mental functioning absent polysubstance abuse. Therefore, his decision to discount Dr. McNutt's opinion and accord substantial weight to Dr. Crowder's opinion was based upon substantial evidence, to which the ALJ applied the proper legal standards.

> **B.     The ALJ Properly Evaluated the Medical Evidence in Determining that Plaintiff Does Not Meet Listing 12.04 for Depression at Step Three of the Sequential Evaluation**

Plaintiff argues that based on the medical evidence of record he "most likely" meets Listing 12.04 of the Regulations at step three of the sequential evaluation, 20 C.F.R. § 416.920(a)(4)(iii) and (d). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. (Doc. #9, at 4). Primarily, Plaintiff bases this argument on the opinion of Dr. McNutt, which, as discussed above, the ALJ properly discounted.

The listings set forth certain impairments that are considered presumptively disabling when objective medical evidence satisfies the specified criteria for a given listing section. Plaintiff bears the burden of proving that he meets a listing by producing medical evidence that establishes all of the required medical findings. *Bowen v. Yuckert*, 482 U.S. 137, 146 and n. 5 (1987). If Plaintiff contends that his impairment meets a listed impairment, Plaintiff must "present specific findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson on behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). In *Wilkinson*, the Eleventh Circuit noted that a claimant must "(1) have a diagnosed condition that is included in the listings and

(2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement" and that a diagnoses alone is not sufficient. *Id*. In order to meet a listing, Plaintiff must show that he meets the requirements of both § 12.04A and B, or § 12.04C.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

In order to satisfy § 12.04B, Plaintiff must show that he has a medically documented persistence, either continuous or intermittent, of one of the conditions listed in § 12.04A resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  Even assuming Plaintiff could show he meets a condition listed in § 12.04A, Dr. McNutt is the only physician of record to assess any "marked" mental limitations as required by § 12.04B.  As discussed above, however, the ALJ properly discounted Dr. McNutt's opinion because it is inconsistent with the opinions of Dr. Crowder, Dr. Toshcoff, Dr. Go, Dr. Huggins, Dr. Reoyo, and Dr. Mohabbat that Plaintiff, at worst, has only moderate mental limitations.  Thus, the ALJ's determination that Plaintiff did not meet the requirements of § 12.04B is supported by substantial evidence.

Alternatively, Plaintiff had the opportunity before the Commissioner to show that he meets the requirements of § 12.04C:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04C. Again, the only evidence Plaintiff offered that could support a finding in his favor under this section was the opinion of Dr. McNutt, which, as discussed above, was properly rejected by the ALJ. The ALJ, thus, correctly determined that Plaintiff did not meet his burden with respect to this section.[2]

The record–most notably Dr. Crowder's opinion as well as the opinions of Plaintiff's other doctors–provides substantial evidence for the ALJ's determination that he does not meet a listing under § 12.04. Accordingly, Plaintiff's second argument fails.

### C. The ALJ Properly Considered Plaintiff's Impairments in Combination in Evaluating Disability

Next, Plaintiff's argues that although the ALJ concluded that Plaintiff had the diagnosed impairments of status post pancreatitis, drug abuse, substance induced mood disorder, depression, and anxiety, he did not properly consider these impairments in combination. (Doc. #9, at 6).

The ALJ must consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (finding that "it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled"). The Eleventh Circuit has made clear that statements and findings by an ALJ must show that a Plaintiff's impairments have been considered in combination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) ("the ALJ specifically stated that 'the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment

---

[2] The ALJ need not mechanically recite the fact that Plaintiff does not meet a listing in his decision, as this fact (and the ALJ's finding of it) may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

*or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.' (emphasis added). The ALJ's determination constitutes evidence that he considered the combined effects of Wilson's impairments.") (*citing Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) ("The ALJ states in his decision that 'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months.' It is clear the ALJ considered the combination issue.") (emphasis in original).

The ALJ's decision here amply shows that he considered Plaintiff's impairments in combination. When determining Plaintiff's RFC, including his drug and alcohol abuse, the ALJ stated that "after careful consideration of the entire record, the undersigned finds that, *based on all of the claimant's impairments*, including the substance use disorders," Plaintiff is unable to perform full-time sedentary work. (Tr. 24, 29 – Findings 7-8) (emphasis added). However, when determining Plaintiff's RFC *absent* drug and alcohol abuse, the ALJ stated that "[b]ased on the record when viewed in its entirety," Plaintiff does not meet his burden of proving drug and alcohol abuse is not a contributing factor material to the disability determination. (Tr. 25). The ALJ then stated that in the absence of drug and alcohol abuse, Plaintiff's "medically determinable *impairments*" did not produce symptoms to the extent Plaintiff alleged. (Tr. 25) (emphasis added).

The ALJ also found that although Plaintiff had an "impairment or a combination of impairments" considered "severe" at step two of the sequential evaluation, Plaintiff's "medically determinable impairments" do not meet a listing at step three. (Tr. 29 – Findings 3-4). These

statements, in addition to the ALJ's twelve-page recitation of the medical evidence, show that the ALJ considered Plaintiff's impairments in combination. (Tr. 17-28). The court, therefore, finds no error in the ALJ's determination based on the entirety of the evidence. In accordance with the standards set out by the Eleventh Circuit, the ALJ properly considered Plaintiff's impairments in combination.

### D.     The ALJ Properly Applied the Drug and Alcohol Abuse Standard

Though Plaintiff does not specifically argue that the ALJ erred in determining that Plaintiff failed to meet his burden of proving drug and alcohol abuse is not a contributing factor material to the disability determination, this decision is reviewed by the court as it is key to the ALJ's determination that Plaintiff is not disabled.

In the Contract with America Advancement Act of 1996, Congress amended the Social Security Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The most import factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

As the ALJ's decision makes clear, the record is replete with evidence of Plaintiff's continuous drug and alcohol abuse. Plaintiff consistently abused drugs and alcohol and he failed to present sufficient proof that his drug and alcohol abuse was not a contributing factor material to the determination of disability. Thus, the ALJ did not err in finding that Plaintiff did not carry his burden under *Doughty* of submitting relevant medical evidence to show otherwise. 245 F.3d at 1280. The ALJ's finding that drug and alcohol abuse was a contributing factor material to Plaintiff's disability is supported by substantial evidence.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     25th     day of September, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE